RECEIVED

FEB 20 2025

RICHARD W. NAGEL, CLERK OF COURT
COLUMBUS, OHIO

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

Part 1 Complaint

WILFRED L. ANDERSON,
Plaintiff, Pro Se

v.

STATE OF OHIO,
c/o Ohio Attorney General
30 E. Broad St., 26th Floor
Columbus, Ohio 43215
Defendant.

2:25 CV 0168

JUDGE SARGUS

MAGISTRATE JUDGE VASCURA

Case No. _____

## COMPLAINT TO DECLARE VOID THE VEXATIOUS LITIGATOR DETERMINATION

Comes now the Plaintiff, Wilfred L. Anderson, pro se, and for his Complaint to declare

void the vexatious litigator determination, states as follows:

## I. INTRODUCTION

1. This is an action for declaratory relief seeking to void a state court vexatious litigator

determination that was entered without jurisdiction and obtained through fraud upon the

court. The determination violates Plaintiff's federal due process rights and is void under

Ohio law. This determination was issued in the Cuyahoga County Court of Common Pleas, Case No. CV-14-820828, on March 6, 2015.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this case arises under the Constitution and laws of the United States, specifically the Due Process Clause of the Fourteenth Amendment.

3. Venue is proper in this District because the events giving rise to this action occurred within the State of Ohio, and the Defendant is subject to personal jurisdiction in the State of Ohio.

## III. STATEMENT OF FACTS

4. On January 27, 2014, Plaintiff filed Case No. CV-14-820828 in the Cuyahoga County Court of Common Pleas against CMHA and Luann Mitchell. This case had merit, as evidenced by the fact that it proceeded to trial and that the other defendant, CMHA, settled after several hearings.

12/22/2014 JE

THE ATTORNEY FOR THE RESPECTIVE PARTIES DO HEREBY STIPULATE THIS MATTER IS RESOLVED AS AGAINST DEFENDANTS CMHA AND PAMELA BRADLEY, WITH PREJUDICE

5. On June 24, 2013, Mitchell filed for bankruptcy, triggering an automatic stay of all proceedings against her. Mitchell fraudulently concealed this fact for 571 days, allowing the case to proceed through multiple pretrial hearings.

6. Mitchell filed a counterclaim seeking to have Plaintiff declared a vexatious litigator. She initiated this counterclaim using an affidavit of indigence that falsely claimed she owned "zero" property. This was demonstrably false, as the Northern District of Ohio Bankruptcy Court had found in an April 30, 2014 memorandum opinion that Mitchell owned property at 375 Balmoral "in fee simple." See Exhibit 1.

7. On March 2, 2015, in a related case (CV-14-820186), Judge Daniel Gaul held a hearing. Judge Gaul issued a consent decree order barring both Plaintiff and Mitchell from filing any further lawsuits or motions without his express approval, under threat of incarceration for contempt. This order was issued in response to Mitchell's disruptive behavior and frivolous filings, as detailed in the transcript of the hearing, contained in the "Corrigan Grievance" document (attached as Exhibit 1).

8. Despite this order, and the fact that the court was aware of Mitchell's bankruptcy filing as of January 30, 2015, Judge John P. Corrigan proceeded with a hearing on Mitchell's motion to declare Plaintiff a vexatious litigator on March 6, 2015. This hearing was conducted ex parte, without the presence of Plaintiff.

9. Judge Corrigan's decision to conduct this hearing without Plaintiff, despite his perfect attendance record in all prior hearings, demonstrates a concerning disregard for due process and suggests potential bias on the part of the judge. This action deprived Plaintiff of the opportunity to defend himself against Mitchell's accusations and challenge her fraudulent claims.

10. Mitchell's appearance at this hearing, in direct violation of Judge Gaul's order, was a deliberate attempt to capitalize on Plaintiff's expected absence. She likely anticipated that Plaintiff, in compliance with Judge Gaul's order, would not appear, allowing her to present false and misleading information to Judge Corrigan without opposition.

11. Judge Corrigan, unaware of Judge Gaul's prior order and Mitchell's fraudulent conduct, granted the motion to declare Plaintiff a vexatious litigator. This determination was based solely on Mitchell's ex parte testimony and without any opportunity for Plaintiff to be heard.

12. Judge Corrigan later used this void order to hold Plaintiff in criminal contempt of court, sentencing him to 50 days in jail. This contempt finding was based on Plaintiff's alleged violation of the vexatious litigator order, which, as demonstrated in this Complaint, was issued without jurisdiction and through fraud. Judge Corrigan remanded Plaintiff to custody after 5:00 PM on a Friday, refusing to stay the sentence pending appeal.

13. The Eighth District Court of Appeals reversed the contempt finding, holding that it was an abuse of discretion. This finding by the appellate court provides strong evidence of Judge Corrigan's bias and improper conduct. It indicates that his actions were not based on a fair and impartial application of the law but rather on a personal animus towards Plaintiff.

14. The Eighth District Court of Appeals has refused to hear Plaintiff's appeal of the underlying vexatious litigator determination, creating a Catch-22 by reasoning that Plaintiff cannot appeal because he is a vexatious litigator.

15. Luann Mitchell's conduct in this case is consistent with her history of unethical behavior. In Disciplinary Counsel v. Mitchell, 143 Ohio St.3d 314, 2015-Ohio-2454, the Supreme Court of Ohio suspended Mitchell from the practice of law for two years due to multiple violations of the Rules of Professional Conduct. The Court found that Mitchell engaged in "a pattern of neglect, misrepresentation, and lack of candor" and exhibited a "deviation from truth, logic, and perhaps reality." These findings are directly relevant to her conduct in the present case, where she concealed material facts, made false statements, and manipulated the judicial process for her own benefit. Mitchell has been suspended from the practice of law since July 6, 2015, and remains suspended to this day in 2025 because she has not met the conditions for reinstatement. This ongoing suspension further underscores her lack of credibility and trustworthiness.

16. While Judges Corrigan and Gaul may not have been aware of Mitchell's fraud at the time of the vexatious litigator determination, their subsequent inaction has contributed to the ongoing injustice. Judge Gaul, when informed of Mitchell's violation of his order and her fraudulent conduct, refused to take corrective action. He rejected Plaintiff's motion to correct the record, citing the vexatious litigator determination as a justification. This reasoning is illogical and demonstrates a disregard for due process. Similarly, Judge Corrigan has failed to address the manifest injustice caused by his order, despite being made aware of Mitchell's fraud and the lack of jurisdiction. The inaction of these judges has allowed the void judgment to stand, perpetuating the harm to Plaintiff and undermining the integrity of the judicial system.

17. Judge Corrigan's actions demonstrate a fundamental misunderstanding of the Ohio vexatious litigator statute (Ohio Revised Code §2323.52). This statute does not provide for criminal penalties, such as imprisonment. Instead, it focuses on deterring frivolous lawsuits and compensating those harmed by them through measures like court costs, dismissal of cases, and restrictions on future filings. Judge Corrigan appears to have conflated the "designation" of Plaintiff as a vexatious litigator with a court order that can be enforced through criminal contempt. This is a critical error that reveals a lack of understanding of the law and its proper application. While Judge Corrigan's misunderstanding of the statute may initially appear to be incompetence, the totality of the circumstances suggests that it was a deliberate act to justify his biased actions against Plaintiff. His willingness to use the vexatious litigator determination as a basis for criminal contempt, despite its lack of legal foundation, indicates a desire to punish Plaintiff rather

than uphold the law. Judge Corrigan's misapplication of the vexatious litigator statute constitutes a clear abuse of discretion. It demonstrates a disregard for the law and a willingness to manipulate legal procedures to achieve a desired outcome. This abuse of discretion further supports Plaintiff's claim that the vexatious litigator determination was obtained unconstitutionally and through bias.

18. Judge Gaul failed to maintain accurate records in his docket for Case No. CV-14-820186 by deleting the entry for the March 2, 2015 hearing where he issued the consent order. This deletion obscured the jurisdictional limitations placed on Judge Corrigan and hindered Plaintiff's ability to challenge the vexatious litigator determination. However, Judge Gaul's order is clearly recorded in the transcript. (See Exhibit 1)

IV. CAUSES OF ACTION

A. Violation of Due Process

19. The vexatious litigator determination violated Plaintiff's right to due process of law under the Fourteenth Amendment to the United States Constitution because:

It was entered without effective notice or opportunity to be heard, as Judge Gaul's order and threat of incarceration superseded any prior notice;

It was based solely on ex parte testimony;

It was obtained through fraud and concealment of material facts;

It has been effectively insulated from appellate review;

It has been used to impose criminal penalties that were reversed as an unlawful abuse of discretion.

B. Void Judgment Under Ohio Law

20. Under Ohio law, a judgment is void ab initio if the court lacked jurisdiction to enter it. The vexatious litigator determination is void under Ohio law because:

Judge Gaul had retained exclusive jurisdiction over disputes between the parties, removing personal and subject matter jurisdiction from Judge Corrigan;

The underlying case was automatically stayed by Mitchell's bankruptcy;

Judge Corrigan, therefore, lacked both personal and subject matter jurisdiction. A void judgment is a nullity and can be attacked at any time.

C. Void Judgment Due to Fraud Upon the Court

21. Under Ohio law, a judgment is void if it was obtained through fraud upon the court. The vexatious litigator determination is void because it was obtained through fraud upon the court, including:

Mitchell's fraudulent concealment of Judge Gaul's exclusive jurisdiction;

Mitchell's 571-day concealment of her bankruptcy stay;

Mitchell's submission of a knowingly false affidavit of indigence;

The mysterious deletion of the consent order hearing from the docket. These fraudulent acts prevented Plaintiff from presenting his defense and corrupted the court's ability to perform its judicial task impartially.

## V. ROOKER-FELDMAN DOCTRINE

22. The Rooker-Feldman doctrine does not bar this Court from considering Plaintiff's claims. This doctrine prevents federal district courts from exercising appellate jurisdiction over state court judgments. This case is not an appeal of the state court judgment. Instead, Plaintiff seeks declaratory relief to void the vexatious litigator determination because it was obtained unconstitutionally, without personal or subject matter jurisdiction, and through fraud, rendering it void ab initio. This Court has independent jurisdiction to address Plaintiff's federal constitutional claims and to declare void a state court judgment entered without jurisdiction. Furthermore, this Court has the authority to review a state court judgment for due process defects, even if it does not directly overturn the judgment on its merits. This Court has independent jurisdiction to address federal constitutional claims, even if those claims are related to a state court judgment.

## VI. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare void ab initio the vexatious litigator determination of March 6, 2015;

B. Find that Plaintiff's due process rights were violated;

C. Hold Luann Mitchell accountable for her fraudulent conduct;

D. Order the state court to address the jurisdictional defects and fraud in the underlying case;

E. Grant such other and further relief as the Court deems just and equitable.

Respectfully submitted,

Wilfred L. Anderson, MD
Plaintiff, Pro Se
wilfredanderson@adelphia.net
(216)245-8744

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

Part 1 - Brief 1 of 2

WILFRED L. ANDERSON,
Plaintiff, Pro Se

v.

STATE OF OHIO,
Defendant

Case No. _____

SUPPLEMENTAL BRIEF REGARDING THE ROOKER-FELDMAN DOCTRINE

Comes now the Plaintiff, Wilfred L. Anderson, pro se, and submits this Supplemental Brief to address the applicability of the Rooker-Feldman doctrine to the instant case. Plaintiff maintains that the Rooker-Feldman doctrine does not bar this Court from considering his claims for the following reasons:

## I. THE ROOKER-FELDMAN DOCTRINE: A NARROW RULE

1. The Rooker-Feldman doctrine is a jurisdictional rule that prevents federal district courts from exercising appellate review over state court judgments. This doctrine is grounded in the principle that federal district courts are courts of original jurisdiction, not appellate courts for state court decisions.

2. The Supreme Court has clarified the scope of the Rooker-Feldman doctrine, emphasizing its narrow application. In Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005), the Court held that the doctrine applies only to cases where the federal claim is "inextricably intertwined" with the state court judgment. This means the federal claim is so dependent on the state court judgment that it's essentially asking the federal court to overturn or re-do the state court's decision.

## II. PLAINTIFF'S CLAIMS ARE INDEPENDENT AND COLLATERAL

3. Plaintiff's case falls outside the scope of the Rooker-Feldman doctrine because his claims are independent of the state court judgment and constitute a permissible collateral attack. This is not an appeal of the state court's decision on the merits (i.e., whether Plaintiff was rightfully declared a vexatious litigator). Instead, Plaintiff seeks declaratory relief to void the vexatious litigator determination due to fundamental jurisdictional and constitutional defects.

4. Specifically, Plaintiff asserts that the state court judgment is void ab initio because:

a. Lack of Jurisdiction: Judge Corrigan lacked both personal and subject matter jurisdiction to hear the vexatious litigator motion due to Judge Gaul's prior order that granted exclusive jurisdiction to himself. This jurisdictional defect renders the state court judgment void from its inception.

b. Fraud and Due Process Violations: The vexatious litigator determination was procured through fraud upon the court by Defendant Luann Mitchell, who concealed material facts and made misrepresentations to the court. This fraud, compounded by the lack of notice to Plaintiff and the ex parte nature of the hearing, resulted in a denial of Plaintiff's due process rights under the Fourteenth Amendment.

5. Why this is NOT "inextricably intertwined": Plaintiff's claims are not "inextricably intertwined" with the state court judgment because he is not asking this Court to re-examine the evidence or legal arguments presented in the state court, nor is he asking this Court to overturn the state court's decision based on the merits of the case. Rather, he is asserting that the state court completely lacked jurisdiction to hear the matter or render any judgment whatsoever. The vexatious litigator determination is therefore void ab initio, as if it never existed. This challenge to the very existence of the state court judgment is distinct from any review of the merits of the case and falls outside the scope of the Rooker-Feldman doctrine.

III. THIS COURT HAS JURISDICTION TO ADDRESS CONSTITUTIONAL AND JURISDICTIONAL CLAIMS

6. This Court has independent jurisdiction to address Plaintiff's federal constitutional claims, even if those claims are related to a state court judgment. The Supreme Court has held that federal courts have the authority to review state court judgments for jurisdictional defects and due process violations.

7. Plaintiff's claim that the state court lacked jurisdiction to render the vexatious litigator determination raises a federal question that this Court is empowered to adjudicate. Similarly, Plaintiff's claim that he was denied due process is a federal constitutional claim that falls within this Court's jurisdiction.

## IV. JUDICIAL INCOMPETENCE AND COMPLICITY

8. The fraud perpetrated by Mitchell was further enabled by the incompetence and potential complicity of Judges Corrigan and Gaul. Judge Corrigan proceeded with the vexatious litigator hearing despite Plaintiff's absence and without inquiring into the potential jurisdictional issues. Judge Gaul, when informed of Mitchell's fraud and the lack of jurisdiction, refused to take corrective action, citing the vexatious litigator determination itself as a justification. This circular reasoning and refusal to address the underlying fraud and jurisdictional defects demonstrate a profound disregard for due process and raise serious questions about the judges' impartiality and commitment to justice.

9. This judicial incompetence and potential complicity contributed to the perpetuation of the fraud and the deprivation of Plaintiff's due process rights. It underscores the need for this Court to intervene and address the fundamental injustice that has occurred.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that the Rooker-Feldman doctrine does not bar this Court from considering his claims. This Court has the authority and the obligation to address the constitutional violations and fraud that have resulted in a void judgment against Plaintiff. Plaintiff, therefore, requests that this Court exercise its jurisdiction to declare the vexatious litigator determination void ab initio and grant such other relief as may be just and equitable.

Respectfully submitted,

Wilfred L. Anderson, MD
Plaintiff, Pro Se
wilfredanderson@adelphia.net
(216)245-8744

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

Part 1 - Brief 2 of 2

WILFRED L. ANDERSON, Plaintiff, Pro Se
v.
STATE OF OHIO, Defendant

Case No. _____

## BRIEF DEMONSTRATING THE NON-FRIVOLOUS NATURE OF THE UNDERLYING CASE AND THE JUDICIAL MISCONDUCT THAT LED TO THE VEXATIOUS LITIGATOR DETERMINATION

Comes now the Plaintiff, Wilfred L. Anderson, pro se, and submits this Brief to demonstrate that the underlying state case, Case No. CV-14-820828 in the Cuyahoga County Court of Common Pleas, was not frivolous or vexatious. This fact is crucial because it undermines the validity of the vexatious litigator determination, which was issued without jurisdiction, through fraud, and in violation of Plaintiff's due process rights.

## I. CASE PROGRESSION AND SETTLEMENT

The docket for Case No. CV-14-820828 shows that the case, presided over by Judge John P. Corrigan, progressed through multiple stages of litigation, including a Case Management Conference (CMC) and the filing of answers and counterclaims by multiple defendants. Crucially, the case progressed to the date and minute of trial, a fact that strongly indicates the court did not consider the case frivolous. This progression indicates that the court did not consider the case to be frivolous from its outset.

Furthermore, Plaintiff reached a settlement with one of the defendants, CMHA, after several hearings. Settlements typically occur when both parties believe there is some chance of success at trial and are not indicative of frivolous or vexatious litigation.

## II. LACK OF JUDICIAL DETERMINATION OF FRIVOLOUSNESS

At no point did any judge in the state court determine that Plaintiff's claims were frivolous or lacked merit. The case was not dismissed for lack of merit, nor was there any indication that the claims were baseless or intended to harass.

The vexatious litigator determination was made on procedural grounds and based on the fraudulent actions of Defendant Luann Mitchell, not on the merits of Plaintiff's underlying claims.

## III. CONTRADICTORY ACTIONS BY DEFENDANTS

The actions of the defendants in the underlying case further demonstrate that the case was not frivolous. CMHA actively engaged in settlement negotiations and ultimately reached a settlement with Plaintiff. Mitchell filed an answer and a counterclaim, indicating that she considered the case to have some merit and worth defending.

IV. SIGNIFICANCE OF THE TRIAL DATE AND REVELATION OF BANKRUPTCY

The fact that the case progressed to the trial date is particularly significant. Reaching this advanced stage in litigation, where the case was called for trial and all parties were present and ready to proceed, demonstrates that the case had survived preliminary scrutiny by the court and was not considered frivolous. The docket entry from 01/30/2015 explicitly states:

> "CASE CALLED FOR TRIAL ON 1/15/15. THE COURT LEARNS THAT DEFENDANT LUANN MITCHELL HAS FILED FOR BANKRUPTCY, CASE NO. 13-14494. PLAINTIFF'S CASE AGAINST DEFENDANT IS STAYED PURSUANT TO THE BANKRUPTCY FILING. DEFENDANT'S COUNTERCLAIM SEEKING TO DECLARE PLAINTIFF A VEXATIOUS LITIGATOR REMAINS PENDING. HEARING SET. HEARING SET FOR 03/06/2015 AT 10:00 AM. NOTICE ISSUED."

It is crucial to note that Plaintiff, not Defendant Luann Mitchell, revealed her bankruptcy filing on the day of trial. This deceptive action by Mitchell, and the court's apparent prior knowledge of the bankruptcy, further demonstrates a pattern of fraudulent behavior and undermines the validity of the vexatious litigator determination.

Although the trial did not proceed due to the revelation of Mitchell's bankruptcy filing, the fact that it was called for trial strongly suggests that the court did not view the case as frivolous or vexatious.

## V. COURT'S IMPROPER ACTIONS AND BIAS

The court's decision to proceed with the vexatious litigator claim despite Mitchell's bankruptcy raises serious concerns about Judge Corrigan's conduct. It appears that Judge Corrigan, knowing that Plaintiff was a pro se litigant and aware of Mitchell's bankruptcy filing, intentionally took advantage of Plaintiff's lack of legal expertise. Under bankruptcy law, a court cannot proceed with a claim for damages by a debtor without the express written consent of the bankruptcy trustee. There is no evidence that such consent was obtained by Luann Mitchell in this case. This suggests that Judge Corrigan deliberately disregarded the law and abused his judicial power to pursue the vexatious litigator determination against Plaintiff.

Furthermore, the court's handling of LuAnn Mitchell's concealment of her bankruptcy filing reveals a stark contrast in its treatment of the parties. While there was no sanction against Mitchell for her 571-day concealment of the bankruptcy stay, which caused an unnecessary use of resources, time, and effort in the court, Judge Corrigan later charged Plaintiff with criminal contempt and sentenced him to 50 days in jail, essentially for filing an appeal and a motion for reconsideration. This disparity in treatment, despite Mitchell's blatant fraud against the court and Plaintiff's legitimate pursuit of his claims, strongly suggests a bias against Plaintiff and a willingness to manipulate the legal process to his detriment.

## VI. MITCHELL'S HISTORY OF FRIVOLOUS AND FRAUDULENT FILINGS

The Supreme Court of Ohio suspended Luann Mitchell's law license in Disciplinary Counsel v. Mitchell, 143 Ohio St.3d 314, 2015-Ohio-2454, due to her "pattern of neglect, misrepresentation, and lack of candor." This ruling stemmed from a case where Mitchell was found to have engaged in frivolous and fraudulent legal filings, the same pattern of behavior evident in the present case. To further evade the consequences of her actions in that case, Mitchell filed for bankruptcy in an attempt to shield her assets, including her house, from a civil judgment. This bankruptcy filing is the same one that was later revealed in Case No. CV-14-820828.

Plaintiff brought the Supreme Court's ruling to Judge Corrigan's attention in his "Motion to Strike Defendant Luann Mitchell's Counterclaim Affidavit," filed on July 25, 2014. In this motion, Plaintiff specifically quoted the Supreme Court's finding that Mitchell had "deviated from truth, logic, and perhaps reality, but certainly from the standards required of an attorney."

Plaintiff Anderson also presented evidence of Mitchell's bankruptcy filing, which claimed a house asset (to be protected), where her Affidavit of Indigency fraudulently claimed that she did not own a house, at the same time.

Despite this knowledge, Judge Corrigan later proceeded with the vexatious litigator determination based solely on Mitchell's testimony, without affording Plaintiff due process. This suggests that Judge Corrigan was biased in favor of Mitchell and acted in bad faith by ignoring her documented and adjudicated history of misconduct.

## VII. MITCHELL'S CONTINUED SUSPENSION

It is important to note that Luann Mitchell remains suspended from the practice of law even today in 2025, having not met the conditions for reinstatement. This continued suspension further underscores her lack of credibility and trustworthiness and raises questions about why Judge Corrigan would rely on her testimony to make such a significant determination against Plaintiff.

## VIII. APPEALS COURT FINDINGS OF JUDICIAL MISCONDUCT

The Eighth District Court of Appeals, in its Opinion CA-15-103732, explicitly criticized Judge Corrigan's actions in this case, stating:

> "While we do not condone Anderson's vexatious conduct, we question the reasonableness of the trial court's decision to impose a criminal penalty for Anderson's violation of the civil statute under the circumstances of this case."

The appeals court further highlighted that there was no legal basis for the 50-day jail sentence and fines imposed on Plaintiff, and that Judge Corrigan acted unreasonably by relying on his contempt powers as a first resort when other remedies were available under the vexatious litigator statute. This finding of "unreasonable" conduct by the appeals court provides strong evidence of Judge Corrigan's abuse of discretion and potential bias against Plaintiff.

## IX. EVIDENCE OF JUDGE CORRIGAN'S BIAS AND MISCONDUCT

The actions of Judge John P. Corrigan throughout the proceedings of Case No. CV-14-820828 demonstrate a clear pattern of bias against Plaintiff and a concerning disregard for due process and established legal procedures. This bias and misconduct are evident in the following instances:

Acceptance of a False Affidavit and Denial of Motions to Strike: Plaintiff's "Motion to Strike Affidavit of Indigency 4-13-2014" (see Exhibit 2) meticulously detailed the numerous inconsistencies and irregularities within Defendant Luann Mitchell's affidavit. These included:

Omission of Assets: Mitchell failed to disclose significant assets, including her house, which she had previously declared in a recent bankruptcy filing, creating a false impression of her financial status. This omission directly contradicted the requirements of an affidavit of indigence, which demands full transparency regarding financial resources.

Lack of Notarization: The affidavit lacked a proper notary seal and the identity of the notary agent could not be verified, raising concerns about the document's authenticity and adherence to legal standards.

Contradictory Statements: Mitchell's claims of indigence were directly contradicted by her previous financial disclosures in her bankruptcy filing, casting doubt on her overall credibility and the veracity of her statements to the court.

Perjury: The blatant perjury in the affidavit, corroborated by the bankruptcy case's memorandum of opinion issued just days before the IFP, should have been grounds for

immediate dismissal. Judge Corrigan's disregard for this evidence further points to his bias and willingness to overlook Mitchell's misconduct.

Forgery: The forged notary signature and insufficient jurat on the affidavit raise serious ethical and legal concerns. Judge Corrigan's acceptance of these documents indicates a disregard for the sanctity of legal documents and procedures.

Despite these glaring deficiencies, Judge Corrigan not only accepted the flawed affidavit but also systematically denied every motion filed by Plaintiff seeking to strike it from the record. These denials reveal a troubling pattern of judicial bias and suggest a deliberate attempt to ignore clear irregularities in Mitchell's submissions, thereby undermining the integrity of the legal process and denying Plaintiff a fair opportunity to challenge the vexatious litigator determination. (see Docket in Exhibit 2)

Ignoring Mitchell's History of Misconduct: Plaintiff brought to the court's attention the Supreme Court of Ohio's findings in Disciplinary Counsel v. Mitchell, which detailed Mitchell's "pattern of neglect, misrepresentation, and lack of candor." Judge Corrigan chose to ignore this documented history of misconduct and proceeded with the vexatious litigator determination based solely on Mitchell's testimony. This disregard for readily available information that cast doubt on Mitchell's credibility further demonstrates Judge Corrigan's bias.

Disparate Treatment of the Parties: While Mitchell faced no repercussions for concealing her bankruptcy filing for 571 days, an action that directly impeded the court's proceedings

and wasted valuable time and resources, Plaintiff was held in criminal contempt and jailed for 50 days for procedural errors in filing an appeal and a motion for reconsideration. This stark contrast in treatment reveals a clear double standard applied by Judge Corrigan and suggests a prejudicial attitude towards Plaintiff.

Improper Use of Contempt Powers: The Eighth District Court of Appeals, in its Opinion CA-15-103732, explicitly criticized Judge Corrigan's use of criminal contempt powers against Plaintiff, deeming it "unreasonable." The appeals court highlighted the lack of legal basis for the 50-day jail sentence and the availability of alternative remedies under the vexatious litigator statute. This criticism from a higher court lends further credence to the claim of Judge Corrigan's abuse of discretion and biased conduct.

Complicity in Concealing Bankruptcy and Disregarding Established Procedures: The court's apparent prior knowledge of Mitchell's bankruptcy filing, coupled with its decision to proceed with the vexatious litigator claim despite the automatic stay, and Judge Corrigan's failure to cite Luann Mitchell for contempt for concealing the bankruptcy stay, suggests a deliberate attempt to take advantage of Plaintiff's legal ignorance. This manipulation of the legal process, along with the acceptance of a false and forged affidavit and the disregard for perjury and deception, demonstrates Judge Corrigan's bias and willingness to disregard established procedures to achieve a desired outcome.

The cumulative effect of these actions reveals a disturbing pattern of judicial bias and misconduct that casts serious doubt on the fairness and impartiality of the proceedings in

Case No. CV-14-820828. Judge Corrigan's apparent willingness to favor one party over another and manipulate legal procedures to achieve a desired outcome raises significant concerns about the integrity of the vexatious litigator determination and its adherence to due process principles.

X. CONCLUSION

The evidence presented in this Brief demonstrates that the underlying state case, Case No. CV-14-820828, was not frivolous or vexatious. The case progressed through multiple stages of litigation, a settlement was reached with one defendant, and the case was called for trial. These facts, along with Mitchell's concealment of her bankruptcy filing, the court's improper actions, Judge Corrigan's disregard of Mitchell's documented misconduct, Mitchell's continued suspension from the practice of law, the appeals court's criticism of Judge Corrigan's actions, and the evidence of Judge Corrigan's bias and misconduct, contradict the vexatious litigator determination and support Plaintiff's claim that the determination was issued without jurisdiction, through fraud, and in violation of his due process rights.

Respectfully submitted,

Wilfred L. Anderson, MD

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

Part 2 Complaint

WILFRED L. ANDERSON,
Plaintiff,

v.

STATE OF OHIO,
c/o Ohio Attorney General
30 E. Broad St., 26th Floor
Columbus, Ohio 43215
Defendant.

Case No. _____

COMPLAINT FOR DECLARATORY RELIEF
TO DECLARE JUDGMENT VOID IN CIVIL PROTECTION ORDER

INTRODUCTION

This action challenges the constitutionality and validity of a civil protection order obtained through a pattern of fraud upon the Cuyahoga County Court of Common Pleas and systematically protected through judicial misconduct, culminating in a final order issued by Judge Shannon Gallagher on May 21, 2015, in Case No. CV-15-844989. This order was based on deliberately tampered evidence and perjured testimony that subsequently led to the criminal indictment of Luann Mitchell. Despite these fundamental flaws, the state court upheld the Civil Protection Order and further denied Plaintiff's attempts to appeal and seek reconsideration based on a "vexatious litigator" designation, necessitating this federal action to vindicate Plaintiff's constitutional rights.

APPLICABILITY OF THE ROOKER-FELDMAN DOCTRINE

The Rooker-Feldman doctrine does not bar this Court's jurisdiction over this matter. While the doctrine generally prevents federal district courts from exercising appellate review over state court judgments, the Supreme Court in Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005), has clarified that Rooker-Feldman applies only to cases where the federal claim is "inextricably intertwined" with the state court judgment.

This case falls outside Rooker-Feldman's scope for several reasons:

1. Collateral Attack on a Void Judgment: This action constitutes a permissible collateral attack on a void judgment rather than an appeal of the state court's decision on the merits. The relief sought is not a reversal of the state court's substantive findings, but rather a declaration that the judgment is void ab initio due to fraud upon the court, fundamental jurisdictional defects, and a denial of due process that rendered the state court proceedings a nullity.

2. Independent Claims: The claims presented are independent of the state court judgment, as they challenge the very existence and legitimacy of the proceedings rather than their substantive outcome. The systematic document tampering, perjury, and judicial misconduct that occurred render the judgment void from inception.

3. Federal Jurisdiction over Constitutional Violations: Federal courts retain jurisdiction to address constitutional violations and fraud that render state court judgments void, even when those judgments form the backdrop for the constitutional claims. This principle is

particularly relevant here, where the fraud was perpetrated through the manipulation of court processes and documents, and where the state court actively participated in concealing the fraud and preventing a fair hearing.

JURISDICTION AND VENUE

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) as this action arises under the Constitution and laws of the United States, specifically the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant is located in the Southern District of Ohio and the actions giving rise to this claim occurred in the State of Ohio.

PARTIES

Plaintiff Wilfred L. Anderson is a resident of Cuyahoga County, Ohio. He has never had any physical contact with or made any threats against Luann Mitchell outside of legitimate court proceedings.

Defendant State of Ohio is a state of the United States.

FACTUAL BACKGROUND

A. Initial Testing of Document Tampering Scheme - CV-15-840663

In February 2015, Mitchell first tested her evidence tampering scheme in Case No. CV-15-840663. Under Ohio law, civil protection orders begin with an ex parte hearing where only the petitioner appears before a magistrate to seek temporary protection. If granted, the court then directs the sheriff to serve the respondent with the complete petition and temporary order, and schedules a full hearing approximately two weeks later where both parties can present evidence.

Mitchell exploited vulnerabilities in this process. She initially filed complete documents with all required attachments, claiming she felt threatened because Dr. Anderson had filed lawsuits against her in state court. At the ex parte hearing on February 18, 2015, a magistrate reviewed these complete documents and granted a temporary protective order based on Mitchell's allegations. However, after obtaining the magistrate's review but before the documents were transferred to the sheriff for service on Dr. Anderson, Mitchell removed critical attachments from the court record.

The court documented this tampering in its March 18, 2015, order, which stated:

> "IT HAS COME TO THE ATTENTION OF THE COURT THAT PETITIONER LUANN MITCHELL HAS FAILED TO FILE THE ATTACHMENT TO HER PETITION FOR CIVIL STALKING PROTECTION ORDER, UPON WHICH THE EX PARTE ORDER WAS GRANTED ON 02/18/2015. PETITIONER MITCHELL IS ORDERED TO FILE SAID ATTACHMENT TO HER PETITION BY 03/23/2015 OR HER PETITION SHALL BE DISMISSED."

While this first case was dismissed as insufficient, it provided Mitchell with crucial knowledge about the court's vulnerabilities:

1. Court security was inadequate to prevent the removal of documents after they had been properly filed and reviewed.

2. Document removal would be treated merely as an administrative oversight rather than criminal tampering with evidence.

3. The court would help conceal tampering by implying impossible judicial conduct.

4. Timing the removal and delayed return of documents was crucial to prevent effective defense preparation.

B. Execution of Refined Fraud Scheme - CV-15-844989

Having proven the court's vulnerabilities through her first attempt, Mitchell executed an identical but refined scheme in CV-15-844989 less than six weeks later. On May 1, 2015, she properly filed complete documents that contained manufactured police reports falsely claiming Dr. Anderson had driven by her house on two specific occasions. These false reports, which included fabricated dates and times of the alleged drive-bys, were strategically designed to form the basis of her planned perjured testimony.

Magistrate Creed reviewed these complete documents during an ex parte hearing and issued a temporary protective order based on the allegations they contained. After obtaining the magistrate's review but before service could be made on Dr. Anderson, Mitchell removed the critical accusation attachments from the court record.

This tampering was documented in the court's May 11, 2015, order stating:

> "IT HAS COME TO THE ATTENTION OF THE COURT THAT PETITIONER LUANN MITCHELL HAS FAILED TO FILE THE ATTACHMENTS TO HER PETITION FOR CIVIL STALKING PROTECTION ORDER, UPON WHICH THE EX PARTE ORDER WAS GRANTED ON 05/01/2015. PETITIONER MITCHELL IS ORDERED TO FILE SAID ATTACHMENT TO HER PETITION BY 05/15/2015 OR HER PETITION SHALL BE DISMISSED."

The Sheriff's Department delivered this defective petition on May 7, 2015. The summons section titled "Engaged in the following act(s)" contained only the words "see attached," but there were no attachments provided, and the delivering deputy had no explanation for their absence.

## C. Orchestration of Perjured Testimony

Mitchell's document tampering was strategically designed to facilitate her planned perjury by preventing Dr. Anderson from obtaining evidence that would disprove her false claims. On May 20, 2015, just 15-20 minutes before the full hearing, the complete petition with all attachments was finally served on Dr. Anderson outside the courtroom door, giving him no meaningful opportunity to prepare a defense.

During the hearing, Mitchell testified under oath that she had personally observed Dr. Anderson drive past her residence on two specific occasions. This testimony was knowingly false and formed the basis for her subsequent indictment for perjury.

## D. Judicial Misconduct and Protection of Fraud

Judge Gallagher's conduct throughout the proceedings demonstrated either incompetence or complicity in Mitchell's fraud scheme:

1. Prior Knowledge of Tampering: She had witnessed identical document tampering by Mitchell in CV-15-840663 just two months earlier, yet took no preventive action when the same pattern emerged in this case.

2. False Claims in the Order: She falsely claimed in her May 21, 2015, order that Dr. Anderson "was on notice" and "had adequate time to prepare a defense" despite knowing the critical documents had been tampered with and served at the last minute.

3. False Claims During the Hearing: She falsely claimed during the hearing that the documents "were available online" when, as a judge handling protection orders, she knew such records are not publicly accessible for safety reasons.

4. Suppression of Evidence: She struck evidence of Mitchell's documented history of false statements, including the Ohio Supreme Court's finding in Cleveland Bar Assn. v. Mitchell, 118 Ohio St.3d 98, 2008-Ohio-1822, that Mitchell had "deviated from truth, logic, and perhaps reality."

5. Denial of Continuance and Motion for Reconsideration: She denied Dr. Anderson's motion for continuance despite clear evidence that service had been defective and he had no time to prepare a defense. Furthermore, a few weeks later, Dr. Anderson filed a motion for reconsideration, providing the court with casino records obtained three days after the hearing that refuted Mitchell's false allegations. Despite this evidence and the clear demonstration that Dr. Anderson was denied adequate time to prepare, Judge Gallagher denied the motion for reconsideration, further demonstrating a willful disregard for his due process rights.

E. Lack of Personal Jurisdiction

The defective service in this case further compounded the due process violations.  Under Ohio law, a judgment entered without personal jurisdiction is void ab initio. Patton v. Diemer (1988), 35 Ohio St.3d 68. Personal jurisdiction requires valid service of all documents essential to the action. CompuServe, Inc. v. Trionfo (1993), 91 Ohio App.3d 157, 161. The Ohio Supreme Court has consistently held that service of incomplete documents missing essential components is legally equivalent to no service at all. This principle is rooted in the fundamental requirement of due process, which mandates that a defendant receive adequate notice and a meaningful opportunity to be heard before a court can exercise jurisdiction over them. Mullane v. Central Hanover Bank & Trust Co. (1950), 339 U.S. 306.

In this case, the initial service on Dr. Anderson was fatally defective. Specifically, the initial service lacked the essential attachments detailing the alleged incidents of stalking and harassment, which formed the basis of the petition and the ex parte order. It lacked the essential attachments that formed the basis of the allegations against him, preventing him from understanding the charges and preparing a defense. This defective service, combined with the subsequent judicial misconduct, rendered the state court proceedings a nullity from their inception.

F. Systemic Protection of Fraud by Court Officers

Multiple court officers participated in enabling and protecting Mitchell's fraud scheme:

  Magistrate Creed: Failed to secure the documents she reviewed, certify what she examined, ensure proper service, and prevent tampering.

  Clerk of Courts: Accepted and processed an incomplete summons, transferring it to the Sheriff despite its defects.

  Sheriff's Department: Delivered the defective summons knowing it lacked the required attachments.

This systemic failure to uphold the integrity of the judicial process further contributed to the deprivation of Dr. Anderson's due process rights.

G. Creation of Life-Threatening Risk

The fraudulently obtained protection order placed Dr. Anderson at heightened risk of deadly force by law enforcement. The most dangerous call for police officers is a domestic violence call. By labeling Dr. Anderson a "stalker," the void order ensured he would be approached as an armed threat in any police encounter. As documented by studies cited in the Los Angeles Times (August 16, 2019), Black men face 2.5 times higher risk of death in police encounters compared to white men. Judge Gallagher's knowing enforcement of

an order obtained through fraud thus exponentially increased the risk that Dr. Anderson, a 6'4" Black male, would be shot and killed by police.

This risk materialized when Mitchell attempted to weaponize the fraudulent order. On March 6, 2017, she made three separate appearances at Cleveland police stations attempting to have Dr. Anderson arrested based on alleged violations weeks earlier. As documented in Cleveland Police Investigative Unit case# IU-2017-0015, when police refused to make an immediate arrest, Mitchell filed false complaints against the officers and falsely claimed that the detective investigating her perjury was Dr. Anderson's "friend and fraternity brother."

H. Pattern of Preventing Appeal

The court appears to have systematically blocked Anderson's attempts to challenge these irregularities and seek appellate review:

1. Striking rather than denying his motion about Mitchell's credibility: By striking the motion instead of denying it, the court arguably attempted to prevent this issue from becoming part of the official record and being subject to appellate review.

2. Using the vexatious litigator designation to deny appellate access: Labeling Anderson a "vexatious litigator" appears to be a tactic to restrict his access to the courts and prevent him from challenging the court's rulings. This is evidenced by the denial of his appeal, as documented in 'Docket 2nd CPO case Appeals Case Docket Page.pdf,' and the denial of his motion for reconsideration, as documented in '05212019 Rule 60(B)(5) Motion to Set Aside Judgment that is Void due to Fraud Upon the Court, denied by Judge John Russo because vexatious.'

3. Creating a circular situation preventing challenge of either order: The interplay between the Civil Protection Order and the vexatious litigator designation creates a Catch-22, making it extremely difficult for Anderson to challenge either order.

These actions suggest a deliberate effort to insulate the court's decisions from scrutiny and prevent Anderson from seeking justice through the appellate process.

## CONSTITUTIONAL VIOLATIONS

The actions described above constitute egregious violations of Dr. Anderson's constitutional rights, specifically:

Due Process Violations: The document tampering, perjured testimony, and judicial misconduct deprived Dr. Anderson of his fundamental due process rights under the Fourteenth Amendment, including the right to notice, the opportunity to be heard, and the right to present a defense.

Equal Protection Violation: The heightened risk faced by Dr. Anderson due to his race, coupled with the court's deliberate indifference to the fraudulent nature of the order, raises potential claims under the Equal Protection Clause.

## LEGAL AUTHORITY

The judgment in CV-15-844989 is void ab initio for multiple independent reasons:

1. Fraud Upon the Court: A judgment obtained through fraud upon the court is void and can be attacked at any time. Coulson v. Coulson, 5 Ohio St.3d 12, 15 (1983).

2. Inherent Power to Vacate Void Judgments: The authority to vacate a void judgment "is not derived from Civ. R. 60(B), but rather constitutes an inherent power possessed by Ohio courts." Patton v. Diemer, 35 Ohio St.3d 68, 70 (1988).

3. Due Process Requirements: The Due Process Clause of the Fourteenth Amendment mandates that any charging method employed by the state must give the defendant fair notice of the charges to permit adequate preparation of a defense. In Re Ruffalo, 390 U.S. 544 (1968).

4. Right to Counsel and to Prepare a Defense: "It is a basic due process right and indeed essential to a fair trial, that defense counsel be afforded the reasonable opportunity to prepare his case." State v. Sowders, 4 Ohio St.3d 143, 144 (1983).


PRAYER FOR RELIEF


WHEREFORE, Plaintiff respectfully requests that this Court:


A. Declare that the civil protection order issued in Cuyahoga County Court of Common Pleas Case No. CV-15-844989 is void ab initio due to systematic fraud upon the court, lack of personal jurisdiction, and denial of due process;

B. Find that Plaintiff's constitutional rights were violated through the documented fraud, judicial misconduct, and other actions described herein;

C. Grant such other and further relief as this Court deems just and proper.


Respectfully submitted,

Wilfred L. Anderson, MD
7230 Kinsman Road #213
Cleveland, OH 44104
(216) 245-8744
wilfredanderson@adelphia.net

Patton v. Diemer_ (1988), 35 Ohio St.3d 68:** Establishes that a judgment entered without personal jurisdiction is void *ab initio* in Ohio.

CompuServe, Inc. v. Trionfo_ (1993), 91 Ohio App.3d 157, 161:** Ohio case emphasizing the necessity of valid service of process for personal jurisdiction.

Mullane v. Central Hanover Bank & Trust Co._ (1950), 339 U.S. 306:** US Supreme Court case highlighting the due process requirement of adequate notice and opportunity to be heard.

Records Deposition Service, Inc. v. Henderson & Goldberg, P.C._ (1995), 100 Ohio App.3d 495, 502:** Ohio case demonstrating that defective service can invalidate a judgment.

Pawlowski v. Pawlowski_ (1989), 61 Ohio App.3d 620:** Ohio case holding that omitting essential documents from service invalidates it.

State ex rel. Heller v. Miller_ (1980), 61 Ohio St.2d 6:** Ohio case emphasizing strict compliance with service requirements.

Cincinnati v. Hawthorne_ (2000), 136 Ohio App.3d 384:** Ohio case where failure to strictly comply with service requirements voided a judgment.

Cleveland Bar Association v. Mitchell_, 118 Ohio St.3d 98, 2008-Ohio-1822:** Ohio Supreme Court case detailing Mitchell's history of misconduct and suspension from practicing law.

Coulson v. Coulson_, 5 Ohio St.3d 12, 15 (1983):** Ohio case stating that judgments obtained through fraud are void.

In Re Ruffalo_, 390 U.S. 544 (1968):** US Supreme Court case emphasizing the due process requirement of fair notice for adequate defense preparation.

State v. Sowders_, 4 Ohio St.3d 143, 144 (1983):** Ohio case highlighting the right to counsel and reasonable opportunity to prepare a defense.

Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005):** US Supreme Court case clarifying the scope of the Rooker-Feldman doctrine.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

Part 2 - Brief 1 of 1

BRIEF IN SUPPORT OF FEDERAL JURISDICTION:
WHY THE ROOKER-FELDMAN DOCTRINE DOES NOT BAR THIS COURT'S
CONSIDERATION

The Rooker-Feldman doctrine appears at first glance to present a jurisdictional question in this case, as Dr. Anderson seeks relief related to a state court protection order. However, careful analysis of the doctrine's scope and limitations, particularly in light of the Supreme Court's clarification in Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005), demonstrates why the doctrine does not bar this Court's jurisdiction.

I. Understanding "Inextricably Intertwined"

The Supreme Court has established that Rooker-Feldman applies only when the federal claim is "inextricably intertwined" with the state court judgment. This requirement necessitates examining whether the federal court can rule on the plaintiff's claims without needing to review and reject the state court's actual decision.

A claim is "inextricably intertwined" when it's impossible to consider the federal claim without essentially conducting appellate review of the state court's decision. For example, if a plaintiff lost a contract dispute in state court and then filed a federal lawsuit claiming the state court misinterpreted contract law, that would be "inextricably intertwined" because the federal court couldn't rule without reviewing the state court's legal analysis.

II. Why This Case Is Not "Inextricably Intertwined"

Dr. Anderson's case presents multiple independent grounds that establish why his claims are not "inextricably intertwined" with the state court judgment:

A. The Fraud Preceded and Vitiated the Judgment

The documented evidence demonstrates a systematic fraud scheme that corrupted the entire proceeding before any judgment was rendered:

1. Mitchell removed critical documents after obtaining ex parte review, as proven by the court's May 11, 2015 order stating: "IT HAS COME TO THE ATTENTION OF THE COURT THAT PETITIONER LUANN MITCHELL HAS FAILED TO FILE THE ATTACHMENTS TO HER PETITION FOR CIVIL STALKING PROTECTION ORDER, UPON WHICH THE EX PARTE ORDER WAS GRANTED ON 05/01/2015."

2. This was not an isolated incident but a refined scheme, as Mitchell had tested the same tactic in Case No. CV-15-840663, documented by an identical court order dated March 18, 2015.

3. Mitchell manipulated service of process to prevent defense preparation, withholding complete documents until 15 minutes before the hearing.

4. Mitchell committed perjury in obtaining the judgment, leading to her criminal indictment in Case No. CR-15-601296-A.

These actions rendered the entire proceeding void ab initio. Just as a forged contract is void regardless of its terms, a judgment obtained through systematic fraud is void regardless of its substantive merits. The federal court need not examine Judge Gallagher's reasoning to determine that fraud destroyed the proceeding's validity from inception.

B. Constitutional Violations Stand Independent of the Judgment

Dr. Anderson's constitutional claims exist entirely separate from the state court's decision about whether to grant the protection order:

1. The denial of due process through manipulated service violated his constitutional rights before any decision was made.

2. The prevention of defense preparation through document tampering constituted an independent constitutional violation.

3. The systematic protection of fraud by court officers represents a distinct constitutional injury.

4. The creation of racially discriminatory risk through weaponization of the void order presents separate constitutional issues.

These violations would exist even if Judge Gallagher had ruled differently on the protection order itself. They challenge the constitutional integrity of the proceeding, not its outcome.

C. New Evidence Discovered After Judgment

Mitchell's subsequent criminal indictment for perjury provides new evidence that wasn't available when the state court ruled. As the Supreme Court noted in Throckmorton, when fraud is discovered after judgment, challenging that judgment based on the newly discovered fraud raises independent issues that could not have been addressed in the original proceeding.

III. Legal Authority Supporting This Analysis

Multiple Supreme Court decisions support finding Dr. Anderson's claims independent from the state court judgment:

A. In Exxon Mobil, the Court emphasized that Rooker-Feldman should not prevent federal courts from exercising jurisdiction over independent claims that happen to involve state court proceedings.

B. Kalb v. Feuerstein, 308 U.S. 433 (1940) established that federal courts retain jurisdiction to determine whether a state court judgment is void.

C. United States v. Throckmorton, 98 U.S. 61 (1878) held that fraud upon the court renders a judgment void and subject to collateral attack at any time.

IV. Conclusion

This case presents precisely the type of independent claims that fall outside Rooker-Feldman's scope. Dr. Anderson does not seek review of Judge Gallagher's decision to grant a protection order. Rather, he challenges the constitutional validity of the entire proceeding based on documented fraud, newly discovered evidence of perjury, and independent constitutional violations. These claims can be evaluated without examining the merits of the state court's decision, placing them squarely outside the "inextricably intertwined" standard that would trigger Rooker-Feldman.

Respectfully submitted,

Wilfred L. Anderson, MD
Pro Se Plaintiff
(216) 245-8744
wilfredanderson@adelphia.net

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

Part 3 Complaint

WILFRED L. ANDERSON,
Plaintiff,

v.

STATE OF OHIO,
c/o Ohio Attorney General
30 E. Broad St., 26th Floor
Columbus, Ohio 43215
Defendant.

Case No:

COMPLAINT FOR DECLARATORY RELIEF
CHALLENGING THE CONSTITUTIONALITY OF
OHIO REVISED CODE § 2323.52 AS APPLIED

INTRODUCTION

1. This action challenges the constitutionality of Ohio Revised Code § 2323.52 as applied

by the Eighth District Court of Appeals, which has arbitrarily restricted Plaintiff's right to

appeal and access the courts in two separate cases originating in the Cuyahoga County

Court of Common Pleas, both of which were initiated by other parties.


2. In both cases, the Eighth District denied Plaintiff's requests to proceed as a vexatious

litigator, despite the demonstrably void nature of the underlying judgments and the well-

established principle that a challenge to a void judgment can be brought at any time.


3. The Eighth District's misapplication of the statute, even after Plaintiff presented credible

and legally valid arguments for void judgments in his requests to proceed, demonstrates

that the statute is unconstitutionally vague and overbroad as applied, leading to arbitrary and discriminatory enforcement. Furthermore, there is no indication that the Eighth District Court of Appeals judges even reviewed the substance of Plaintiff's requests to proceed, suggesting a perfunctory denial of his appeals without due consideration of the merits.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) as this action arises under the Constitution and laws of the United States.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant is located in this District and the actions giving rise to this claim occurred in the State of Ohio.

## PARTIES

6. Plaintiff Wilfred L. Anderson is a resident of Cuyahoga County, Ohio, and has been declared a vexatious litigator in the Cuyahoga County Court of Common Pleas.

7. Defendant State of Ohio is a state of the United States, and is sued in its capacity as the entity responsible for the operation and actions of the Eighth District Court of Appeals.

FACTUAL BACKGROUND

Case No. CV-15-844989 (Judge Shannon Gallagher)

8. In Case No. CV-15-844989, Judge Gallagher in the Cuyahoga County Court of Common Pleas issued a five-year civil protection order against Plaintiff based on tampered evidence and perjured testimony. This case was initiated by Luann Mitchell.

9. Plaintiff's attempts to appeal this order were denied by the Eighth District Court of Appeals on the grounds that he is a vexatious litigator.

10. Plaintiff's request to proceed as a vexatious litigator detailed numerous constitutional violations in Case No. CV-15-844989, including:

    a. Denial of due process due to criminal evidence tampering recorded in the docket, and lack of notice recorded in the docket.

    b. Denial of the right to be heard and present a defense.

    c. Reliance on perjured testimony evidenced by the felony perjury indictment of Luann Mitchell in Case No. CR-15-601296-A, charging her with knowingly making false statements under oath in violation of Ohio Revised Code § 2921.11(A), a felony of the third degree.

    d. Improper denial of the right to appeal.

**Case No. CV-14-820828 (Judge Peter J. Corrigan)**

11. In Case No. CV-14-820828, Judge Corrigan in the Cuyahoga County Court of Common Pleas declared Plaintiff a vexatious litigator based on a hearing where Plaintiff was denied the opportunity to be heard. This case was initiated by [Insert Name of Party who Initiated the Case].

12. The vexatious litigator determination in Case No. CV-14-820828 was void for lack of personal jurisdiction. Judge Gaul's order and threat of incarceration in a related case prevented Plaintiff from appearing at the vexatious litigator hearing.

13. Judge Corrigan, the trial judge in the lower court in Case No. CV-14-820828, explicitly declared that "PLAINTIFF IS NOT PRECLUDED FROM FILING APPEALS IN THIS CASE."

14. Despite this declaration, the Eighth District Court of Appeals denied Plaintiff's attempts to appeal in this case.

15. Plaintiff's request to proceed as a vexatious litigator in Case No. CV-14-820828 also detailed numerous constitutional violations, including:

    a. Denial of due process due to lack of notice and opportunity to be heard.

    b. Improper application of the vexatious litigator statute.

    c. Reliance on fraudulent and perjured testimony.

    d. Denial of the right to appeal.

CONSTITUTIONAL CHALLENGE

16. Ohio Revised Code § 2323.52, as applied by the Eighth District Court of Appeals, is unconstitutional because it arbitrarily restricts Plaintiff's right to appeal and access the courts.

17. The statute is unconstitutionally vague and overbroad as applied, failing to provide clear standards for determining when an appeal is "abusive" or "not legally sufficient." This leads to arbitrary and discriminatory enforcement, as demonstrated by the Eighth District's denial of Plaintiff's requests to proceed, even after he presented credible and legally valid arguments for void judgments.

18. The statute, as applied, violates due process by allowing a single judge to deprive a litigant of the right to appeal without a meaningful opportunity to be heard or to challenge the decision.

19. The statute, as applied, violates the separation of powers by giving individual judges unfettered discretion to dismiss appeals, effectively usurping the role of the full appellate court.

20. The statute, as applied, violates the First Amendment right to petition the government for redress of grievances by allowing for the dismissal of potentially meritorious appeals without proper consideration.

21. The statute, as applied, violates equal protection by treating appeals by those labeled "vexatious litigators" differently from other appellants, without a rational basis for such disparate treatment.

**COUNT I (42 U.S.C. § 1983 - Fourteenth Amendment Due Process and Access to Courts)**

22. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

23. The State of Ohio, through its Eighth District Court of Appeals, violated Plaintiff's constitutional rights to due process and access to the courts by arbitrarily denying his requests to proceed as a vexatious litigator and thereby preventing him from challenging void judgments.

24. The Eighth District's conduct was undertaken with reckless disregard for Plaintiff's clearly established constitutional rights. This disregard is evidenced by the lack of any indication that the Eighth District Court of Appeals judges even reviewed the substance of Plaintiff's requests to proceed, suggesting a perfunctory denial of his appeals without due consideration of the merits.

COUNT II (Declaratory Judgment - 28 U.S.C. §§ 2201-2202)

25. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

26. An actual and justiciable controversy exists between the parties concerning the constitutionality of Ohio Revised Code § 2323.52 as applied.

27. Plaintiff is entitled to a declaratory judgment that the statute, as applied by the Eighth District Court of Appeals, is unconstitutional.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that Ohio Revised Code § 2323.52, as applied by the Eighth District Court of Appeals in Plaintiff's cases, is unconstitutional;

B. Grant such other relief as the Court deems just and equitable.

Respectfully submitted,

Wilfred L. Anderson
7230 Kinsman Road #213
Cleveland, OH 44104

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

Part 3 - Brief 1 of 1

WILFRED ANDERSON, M.D.,
Plaintiff,

v.

STATE OF OHIO, et al.,
Defendants.

Case No.

PLAINTIFF'S BRIEF IN SUPPORT OF COMPLAINT FOR DECLARATORY RELIEF
CHALLENGING THE CONSTITUTIONALITY OF
OHIO REVISED CODE § 2323.52 AS APPLIED

## I. INTRODUCTION

Plaintiff, Wilfred Anderson, M.D., pro se, hereby submits this brief in support of his

Complaint for Declaratory Relief, challenging the constitutionality of Ohio Revised Code

§ 2323.52 as applied. Plaintiff argues that the statute, as applied to him by Judge Mary J.

Boyle, violates his due process rights and denies him access to the courts.


## II. STATEMENT OF FACTS


Plaintiff was charged with rape and kidnapping felony offenses in 1996, more than four

years after the alleged incident occurred in 1992. In 1997, he pleaded guilty to a single

misdemeanor after the trial started, which speaks to the infirmity of the original felony

charges. ] The statute of limitations for misdemeanor offenses in Ohio is two years.

Plaintiff's trial counsel failed to raise the statute of limitations defense. Plaintiff's 1997-98

appeal was dismissed as untimely.

In 2021, Plaintiff filed a motion to set aside the void judgment in the state trial court. The motion was denied, and Plaintiff appealed. Judge Boyle denied Plaintiff's request to proceed with the appeal, stating that the appeal was an abuse of process and that there were no reasonable grounds for the appeal pursuant to 2323.52.

III. ARGUMENT

A. Ohio Revised Code § 2323.52 as Applied is Unconstitutional

Ohio Revised Code § 2323.52, as applied to Plaintiff by Judge Boyle, is unconstitutional because it violates Plaintiff's due process rights and denies him access to the courts. The statute allows a court to declare a person a "vexatious litigator" and impose pre-filing restrictions on that person. However, the statute does not provide clear standards for determining who is a vexatious litigator or what constitutes vexatious litigation. This lack of clarity allows for arbitrary and capricious application of the statute, as demonstrated in Judge Boyle's offhand administrative decision. If that kind of offhand one-dimensional administrative decision-making is allowed, then this 2323.52 is unconstitutional. This brief is not to grant anything. This brief is to demonstrate that unconstitutional silliness is allowed under 2323.52.

B. Judge Boyle's Decision Was Arbitrary and Discriminatory

Judge Boyle's decision to deny Plaintiff's appeal was arbitrary and discriminatory because it was not based on a reasoned analysis of the law or the facts of the case. To quote Judge Boyle:

> The appellant has failed to establish that his attempted appeal is not an abuse of process of the court and there are reasonable grounds for the appeal. It must also be noted that the appellant entered a voluntary, knowing, and intelligent plea of guilty to the amended offense of attempted gross sexual imposition. Crim.R. 11(B)(1) sets forth the effect of a guilty plea: "The plea of guilty is a complete admission of the defendant's guilt."

This demonstrates a flawed understanding of the case. Judge Boyle claimed that Anderson pleaded guilty, and therefore the conviction was valid. This has nothing to do with jurisdiction, and the guilty plea was not knowing or intelligent, obviously because it ignored jurisdiction. The law that Judge Boyle cited, Ohio Crim. R. 11, requires that the terms of the plea be recorded in the record. This was not the case.

Further, gross sexual imposition is essentially attempted rape. Attempted gross sexual imposition is essentially attempted-attempted-rape, which makes no sense. But that is what Anderson plead guilty to. Therefore, Judge Boyles's shoot-from-the-hip "complete admission of the defendant's guilt" decision was basically silly, and demonstrates an extremely poor consideration and understanding of a case that resulted in the revocation

of the medical license of a black physician in Cleveland, where black physicians are in dire deficiency, and the population suffers.

Judge Boyle's decision is particularly egregious in light of the fact that she failed to consider or address the relevant legal precedent of State v. Tolliver, a case from the Eighth District Court of Appeals, the same court where Judge Boyle sits. In Tolliver, the court held that a statute of limitations defense is jurisdictional and may be raised at any time. The facts of State v. Tolliver are strikingly identical to Plaintiff's case. Both involve indictments for felonies, then convictions for lesser offenses outside the statute of limitations for the lesser offense, and ineffective assistance of counsel. Yet, despite the Eighth District Court of Appeals ruling in Tolliver's favor on the exact same legal grounds three years later, Judge Boyle deemed Anderson's appeal frivolous. This suggests a concerning inconsistency in applying the law and raises questions about Judge Boyle's understanding of relevant precedent in her own district. But more than that, it raises the administrative question of how such a poor decision can be allowed to block a constitutional right.

State v. Tolliver was highlighted and discussed in detail in both the appeal and the underlying court motion.

IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court consider this egregious example and grant his Complaint for Declaratory Relief, declaring Ohio Revised Code § 2323.52 unconstitutional as applied.

Respectfully submitted,

Wilfred Anderson, MD, Plaintiff, Pro Se

CERTIFICATE OF SERVICE

I hereby certify that on or before February 19, 2025, I served a copy of the foregoing Complaint and Briefs on counsel for Defendant State of Ohio by email to:

D. GRANT WILSON (0100293)
Assistant Attorney General
Health & Human Services Section
30 East Broad Street, 26th Floor
Columbus, Ohio 43215
Telephone: (614) 466-8600
Fax: (855) 472-1525
Grant.Wilson@OhioAGO.gov

/s/ Wilfred L. Anderson